IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:04CV164-McK

| | |
|---|---|
| HOPE H. JOHNSON, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | MEMORANDUM AND RECOMMENDATION |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #8) and "Memorandum in Support ..." (document #9), both filed October 7, 2004; and the Defendant's "Motion For Summary Judgment" (document #10) and "Memorandum in Support of the Commissioner's Decision" (document #11), both filed November 15, 2004. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On April 11, 2001, Plaintiff applied for a period of disability and Social Security disability insurance benefits ("DIB"), alleging she became disabled on September 29, 1999, as the result of "[p]ain from fingertips to neck, swelling in hand, and constant pain and numbness in 2 fingers." (Tr.

72.) The Plaintiff's claim was denied initially and on reconsideration.

The Plaintiff requested a hearing, which was held March 26, 2003. On May 15, 2003, the ALJ issued an opinion denying the Plaintiff's claim.

Subsequently, the Plaintiff timely filed a Request for Review of Hearing Decision, which the Appeals Council denied on February 16, 2004, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on April 8, 2004, and the parties' cross-motions for summary judgment are now ripe for disposition.

## II. FACTUAL BACKGROUND

The Plaintiff testified that she was born on January 5, 1961, and was 42 years-old at the time of the hearing; that she lived with her husband and two sons, ages 18 and 21; that she had graduated high school and completed one year of college; that her last regular job was as a railroad conductor, but she was laid off; that she then worked on a temporary basis in a mill; that she stopped working in September 1999 for a period of time due to a automobile accident; that she later worked as a parking attendant, but stopped due to pain in her left arm and shoulder; and that she was right-handed.

Regarding her medical and emotional condition, Plaintiff testified that she suffered pain in her head, neck, and left arm and shoulder as a result of her accident; that three fingers on her left hand were numb; that her right hand was "fine"; that she took pain medication; and that she had difficulty remembering.

Regarding her daily activities, the Plaintiff testified that she could bathe and dress herself; that she drove "very little"; that her husband performed the household chores, yard work, and

errands; that she did not go to church or leave her home to pursue any other activities; that she slept "off and on" all day; that she watched television; and that she could walk "about a block."

The Plaintiff's husband, Tony Johnson, testified that most of the Plaintiff's pain was in her left arm; that he could not identify any other part of her body that was painful; that he performed the household chores; and that he and the Plaintiff went out with friends and family.

The record also contains a number of representations by Plaintiff as contained in her various applications in support of her claims. On a Disability Report, dated April 3, 2001, Plaintiff stated that her disabling condition was caused primarily by "[p]ain from fingertips to neck, swelling in hand, and constant pain and numbness in 2 fingers." (Tr. 72). The Agency interviewer, who took the report telephonically, noted that the Plaintiff had no difficulty hearing, reading, breathing, understanding, concentrating, talking, answering, or forming coherent thoughts.

On a Reconsideration Disability Report, dated July 16, 2001, Plaintiff stated that her condition was unchanged; that her doctor had not placed any additional restrictions on her activities; and that she was unable to perform household chores or leave the house, but stayed home and read.

A Report of Contact, dated August 14, 2001, reflects that the Plaintiff stated that she was doing "much better" on Elavil; that her concentration and memory had improved; and that she was unable to work due to physical, rather than mental or emotional, problems.

On an undated Claimant's Statement When Request for Hearing Is Filed, the Plaintiff stated that her condition was unchanged.

On May 8, 2001, Elizabeth Hoyt, M.D., completed a Physical Residual Functional Capacity Assessment and concluded that the Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; that she could sit, stand or walk six hours in an eight-hour work day; that she had

unlimited ability to push and/or pull; that the Plaintiff had no other restrictions and had the residual functional capacity for medium work. Dr. Hoyt further noted that the Plaintiff's medical records showed that a December 2000 examination revealed "modest diffuse" tenderness around the left shoulder and elbow, but "well preserved" range of motion in those joints; and that on March 14, 2001, the Plaintiff was found to be doing "reasonably well" and had reported that her medication was "fairly adequate." (Tr. 123.) On October 23, 2001, Jack Drummond, M.D., reviewed the Plaintiff's medical chart and affirmed Dr. Hoyt's findings, concluding that Plaintiff's "condition is stable." (Tr. 125.)

On October 24, 2001, W. Henry Perkins, Ph.D., completed a Psychiatric Review Technique and concluded that Plaintiff did not suffer from a severe mental or emotional impairment and that further evaluation of her mental residual functional capacity was unwarranted.

The parties have not assigned error to the ALJ's recitation of the medical records, although, as discussed below, the Plaintiff objects to the weight that he gave to the opinion of Dr. Neal S. Taub. Moreover, the undersigned has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> Medical evidence of record establishes that the claimant was evaluated by Dr. Neal S. Taub in December 1999. She reported tingling and stiffness in the third, fourth and fifth fingers of her left hand as well as intermittent numbness and pain beginning after a motor vehicle accident in September 1999. She also reported occasional elbow and shoulder pain as well. Nerve conduction studies performed in December 1999 were all essentially within normal limits. Physical examination showed no specific areas of tenderness but there was increased pain with abduction at the shoulder. The claimant was prescribed medication and when seen in February 2002 she reported the medication was helpful in reducing her pain significantly for periods of time. In August 2000, the claimant continued to report severe radiating pain from her neck to her left hand. A MRI of her left shoulder was interpreted as being relatively benign showing only minimal degenerative changes. A bone scan in

4

November 2000 was interpreted as being compatible with reflex sympathetic dystrophy of both wrists and hands, greater on the left. In December 2000, the claimant reported that her pain was improved on Oxycontin. Physical examination showed modest diffuse tenderness around the left shoulder and left elbow. Dr. Taub noted that the claimant was at maximum medical improvement and will require ongoing pain medications for the foreseeable future. The claimant continued to be seen intermittently and treatment notes document that in July 31, 2001, Dr. Taub stated that in his opinion, due to the claimant's significant pain in spite of significant levels of analgesia, he did not believe that the claimant is competitive for any type of employment and is permanently disabled. In October 2001, Dr. Taub noted that the claimant's pain control was reasonably good under her medication regimen. (Exhibit 4F)

The claimant was evaluated in June 2000 by Dr. Glenn J. Baumblatt, a consultative physician. The claimant reported that her chief complaint was of pain in her left neck down to her fingertips. Physical examination revealed normal range of motion testing of all extremities and grip strength was adequate on left at 4 ½ and 5/5 on the right. She could grasp well, raise her arms overhead, and perform dexterous motions of the hands. Dr. Baumblatt also noted that the claimant did not appear depressed or in discomfort. It was his opinion that based on his examination, the claimant could sit, stand, move about, lift, carry, handle objects, hear, speak, and travel normally. (Exhibit 5F)

Dr. M. Patricia Hogan, a consultative physician, evaluated the claimant in June 2000. The claimant reported that she is in constant pain and that she just generally feels "sick" because of taking medications and not sleeping or eating well. She reported that she has a great deal of difficulty sleeping at night and believes it is probably related to the abuse she suffered as a teenager. The claimant told the doctor that she spends her time doing light cleaning and housework and has no difficulty with personal hygiene tasks. Dr. Hogan commented that although the claimant may have a depressive disorder, she was primarily applying for disability based on her physical injury.[1] (Exhibit 6F)

In March 2002, Dr. Taub completed a questionnaire regarding the claimant's ability to do work-related activities. He indicated that the claimant would be able to lift less than 10 pounds on an occasional basis but no limits on her ability to sit, stand or walk. The doctor stated that the above listed limitations were based on the claimant's severe left arm pain and that this would also affect reaching, handling, fingering, feeling, and pushing/pulling. He concluded by stating that the claimant cannot work. (Exhibit 7F)

---

[1] The Plaintiff was evaluated by Dr. Baumblatt and Dr. Hogan upon consideration of an earlier disability application that was denied.

In December 2001, Dr. Taub's notes indicate that there had been no change in the claimant's condition since last seen. When seen in April 2002, she reported more symptoms of neck pain and headaches as well as "shock like" sensations in her head. A MRI of the claimant's head was performed and was interpreted as normal. Dr. Taub noted that the claimant remained physically active. In July 2002, the claimant was "doing reasonably well" and was walking her dog to become more physically active. By September 2002, treatment notes indicated that the claimant was increasing her activity level and was doing some photographic work at home. (Exhibit 9F)

The claimant has been seen at the Behavioral Health Center during 2001 and 2002. Treatment notes indicate that the majority of the sessions were spent discussing relationship problems. In July 2002, the claimant stated that with a recent change of medication, her depression was resolved and her sleep improved. She also reported that her chronic pain was well controlled. (Exhibits 2F and 9F)

(Tr. 18-19.)

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that Plaintiff appeals.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler,

782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was therefore whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[2]

---

[2] Under the Social Security Act, 42 U.S.C. §301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

7

The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to this proceeding; that the Plaintiff suffered reflex sympathetic dystrophy with chronic pain, which was a severe impairment within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that Plaintiff had the residual functional capacity for unskilled sedentary and light work; that the Plaintiff was unable to perform her past relevant work, due to her inability to concentrate sufficiently to perform semi-skilled work; that the Plaintiff was a "younger individual" with a "high school plus" education; and that Medical-Vocational Rules 201.21 and 201.28 directed a conclusion of "not disabled."

The Plaintiff essentially appeals the ALJ's determination of her residual functional capacity ("RFC"). See Plaintiff's "Motion for Summary Judgment" (document #8) and "Memorandum in Support ... " (document #9). The undersigned finds that Plaintiff's assertion of error is without merit, however, and that substantial evidence supports the ALJ's conclusions regarding the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited her ability to work. Agency medical evaluators concluded that the Plaintiff

8

could lift 50 pounds occasionally and 25 pounds frequently; that she could sit, stand or walk six hours in an eight-hour work day; that she had unlimited ability to push and/or pull; that the Plaintiff had no other restrictions; and that Plaintiff had the residual functional capacity for medium work. An Agency psychological evaluator found that the Plaintiff's alleged depression was not a severe impairment, that is, that it placed no restriction on her activities of daily living, social functioning, or ability to maintain concentration, persistence, and pace.

However, the ALJ found the Plaintiff not disabled based on her ability to perform unskilled light and sedentary work, that is, not only did the ALJ allow a greater exertional restriction than did Agency evaluators, but he also restricted the Plaintiff to unskilled work because of her alleged mental and emotional impairments.

The Plaintiff assigns error because the ALJ did not give controlling weight to Dr. Taub's opinion that the Plaintiff was unable to work. The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

Contrary to Plaintiff's argument, when a treating source's opinion is not given controlling

weight, an ALJ's decision need not address each factor found in 20 C.F.R. §404.1527(d).[3] Rather, an ALJ's decision need only contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

As the ALJ concluded, Dr. Taub's opinion was not entitled to great weight because it was not supported by medically acceptable clinical and laboratory diagnostic techniques, but, rather, was based merely on Plaintiff's subjective complaints of pain. Indeed, the record reflects that the Plaintiff did not see a doctor until nearly three months after her September 1999 car accident, the event that caused her allegedly-disabling condition, and that Dr. Taub's December 1999 nerve conduction study of Plaintiff's upper extremities was normal.

Dr. Taub's opinion was inconsistent with his other treating notes, that is, he reported that Plaintiff increased her activity by doing photographic work and walking her dog, that she was "doing well" in July 2002 (Tr. 202), and that medications were controlling her pain fairly well. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965). Dr. Taub also found that Plaintiff's range of motion was well-preserved, and that she had well-preserved sensation and good muscle mass and tone. (Tr. 189.)

---

[3] The factors an ALJ considers when weighing a treating physician's opinion are (1) the length of the treating relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. 20 C.F.R. § 404.1527(d).

Moreover, as the ALJ noted, Dr. Taub's opinion was inconsistent with Plaintiff's own testimony that her dominant right hand worked "fine" and statements she made to him that she was able to attend church, handle the family finances, and take care of her personal needs.

Finally, Dr. Taub's opinion was inconsistent with other medical records. The Plaintiff had reported to Dr. Hogan that she was able to do light house cleaning and household chores. Dr. Baumblatt's exam included findings that Plaintiff had a normal back and gait, no neurological deficits, a negative straight leg raising test, good knee reflexes, palpable pedals, full range of motion, 4 ½ out of 5 grip strength on the left, 5 out of 5 grip strength on the right, and no present Babinski sign. Dr. Baumblatt also opined that Plaintiff had a good prognosis and the ability to sit, stand, move about, lift, carry, handle objects, hear, speak, travel normally, stand on her heels and toes, squat, rise, tandem walk, grasp well, raise her arms over her head, and perform dexterous motions with her hands.

In short, substantial evidence contradicted Dr. Taub's opinion and supported the ALJ's decision that Dr. Taub's opinion was not entitled to controlling weight. To the contrary, and as discussed above, rather than proving the existence of a disability, the undisputed medical record clearly supports the ALJ's essential conclusion that the Plaintiff suffered from, but was not disabled by, reflex sympathetic dystrophy with chronic pain.

The record also establishes that the Plaintiff engaged in significant daily life activities during the subject period, such as bathing and dressing herself, doing some housework, handling the family finances, walking her dog, visiting family, and socializing with friends; and that Plaintiff was also able to perform other basic cognitive and physical tasks. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff

performed "wide range of house work" which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's reflex sympathetic dystrophy with chronic pain – which could be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ

essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work," and found Plaintiff's subjective description of her limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles, 29 F.3d at 921, citing Hunter, 993 F.2d at 31 (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and her objective ability to carry on with moderate daily activities, that is, Plaintiff's ability to take care of her personal needs and do household chores, as well as the objective medical record, discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's

determinations of the Plaintiff's residual functional capacity.

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #8) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #10) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable H. Brent McKnight.

**SO RECOMMENDED AND ORDERED**, this 18th day of November, 2004.

*Carl Horn, III*
**CARL HORN, III**
**U.S. Magistrate Judge**

```
                                                                    ejb
                    United States District Court
                             for the
                   Western District of North Carolina
                         November 19, 2004


                   * * MAILING CERTIFICATE OF CLERK * *


Re:   3:04-cv-00164



True and correct copies of the attached were mailed by the clerk to the
following:


        George C. Piemonte, Esq.
        Bollinger & Piemonte, PC
        601 East Fifth St.
        Suite 250
        Charlotte, NC   28202

        Jennifer A. Youngs, Esq.
        U.S. Attorney's Office
        227 W. Trade St.
        1700 Carillon Bldg.
        Charlotte, NC   28202




cc:
Judge          McKnight          (✓)
Magistrate Judge  Horn           (✓)
U.S. Marshal                     ( )
Probation                        ( )
U.S. Attorney                    ( )
Atty. for Deft.                  ( )
Defendant                        ( )
Warden                           ( )
Bureau of Prisons                ( )
Court Reporter                   ( )
Courtroom Deputy                 ( )
Orig-Security                    ( )
Bankruptcy Clerk's Ofc.          ( )
Other_____           ( )



                                          Frank G. Johns, Clerk

       Date: 11/19/04                     By:  E. Barton
                                               Deputy Clerk
```